JAMES R. LAWRENCE *vs.* INHABITANTS OF FAIRHAVEN.

The owner of land bordering on a stream, whether navigable or not, may maintain an action of tort against a town laying out a highway and bridge across the stream, to recover any special damage occasioned to his land by the bridge being so built or afterwards altered by a third person for his own benefit with the permission or assent of the town, as to obstruct the course of the stream more than it would otherwise be obstructed; although the bridge is built over a tide mill, the owners of which have acquired a prescriptive right to obstruct the water in a less degree.

ACTION OF TORT, commenced on the 31st of October 1851, for flowing the plaintiff's land bordering upon a stream in which

the tide ebbs and flows, called Herring River. The declaration alleged that the defendants built a highway or dam across said river below the plaintiff's land, with sluice ways, tide gates and other passage ways to enable the tide waters to ebb and flow, and the waters of the river to pass down as they had been accustomed to do ; and afterwards suffered these ways to be closed, and thereby pent up the waters of the river, and flowed the plaintiff's land. The answer averred that the dam was the property of private persons, and that the defendants had no control over it, except to keep in repair a highway which for more than forty years had existed upon said dam ; and denied that they had authorized or were responsible for any closing of said ways. The plaintiff filed a replication, denying substantially the averments of the answer.

At the trial at November term 1853, before *Merrick,* J., the plaintiff offered evidence that the defendants, about 1800, built a wooden bridge as part of a public highway laid out by them across Herring River below his land; and afterwards repaired it, and finally rebuilt the bridge of stone, with two sluice ways or outlets to permit the free passage of the water; and these sluice ways continued open until 1846, when, without any action of the defendants, James Wing closed them, and made an ice pond above the bridge; and they thus remained until November 1850, when the town chose a committee to cause them to be opened ; that Wing obtained a temporary injunction against this, which, upon a hearing before the full court, was dissolved, and the sluice ways opened, and kept open until April 7th 1851, when the town chose a committee to settle by a written agreement all matters in controversy with Wing; and said committee made an agreement accordingly, by which the town allowed Wing to close the sluice ways, and agreed not to interfere with his head of water, or in any way disturb the operation of his pond for the future, and he released all his claims against them for damages, and agreed not to overflow the streets, so as to cause a public nuisance, and also agreed to indemnify them against all suits wh'ch might be brought against them by the riparian proprietors    Wing then closed the sluice ways, and

they so remained until the date of the writ, and by means thereof the water above the bridge had been raised and the plaintiff's land flowed.    There was also evidence tending to show that the stream was navigable for useful purposes.

Upon this evidence the plaintiff asked the judge to rule " that the erection of any structure by the town, without authority, over a navigable stream, would be an unlawful act, and the structure a nuisance, and that if injury was caused to the plaintiff by such act, taken in connection with the act of a third party, the acts of the town and of this third party acting in their effect together, then, although no injury would have happened by the acts of either alone, the defendants would be liable ; that the town had no right so to build their road or bridge, or permit their road or bridge to be so continued, as to flood the lands of the plaintiff, but were bound to keep open sufficient outlet for said waters ; that if the town, after making their road with the necessary outlet for the waters, suffered other parties with their knowledge and with their consent to close the said outlet, and damage was thereby occasioned to the plaintiff, which he would not have suffered but for the existence of the road and bridge as in fact made by the defendants, then they would be liable."

But the judge declined so to rule, and ruled, " that if the bridge, as the town made and left it, was not a cause of injury to the plaintiff, then they were not liable for damage arising from closing of the sluice ways by another party ; that they would not be liable although the act of this third party would not and could not have injured the plaintiff except for the action of the town in building the bridge ; that the town were not liable by reason of acquiescence in the acts of Wing, unless they coöperated with him in his doings ; that the town were not liable for the closing of the sluice ways by Wing in consequence of the agreement between them ; that the town, having made their bridge with sufficient apertures, were not bound to keep the same free and open, and were not answerable if the same were closed by other persons, though with their knowledge and consent."

The jury returned a verdict for the plaintiff, giving him no

damages for this injury, but assessing nominal damages for another injury alleged in the declaration, a statement of which is not material to the understanding of this point. The judge reported the case to the whole court; and the case was argued and decided upon this report at Boston in January 1855.

*R. C. Pitman,* for the plaintiff.

*N. Morton,* for the defendants. This action does not lie; because the statutes provide a special remedy, by application to the selectmen or mayor and aldermen. Rev. Sts. *c.* 25, § 6. *Elder* v. *Bemis,* 2 Met. 599. *Boston* v *Shaw,* 1 Met. 130. *Osborn* v. *Danvers,* 6 Pick. 98. *Little* v. *Greenleaf,* 7 Mass. 236. *Hinsdale* v. *Larned,* 16 Mass. 65. *Baird* v. *Wells,* 22 Pick. 312. *Sudbury Meadows* v. *Middlesex Canal,* 23 Pick. 36. *Dodge* v. *County Commissioners,* 3 Met. 380. *Brown* v. *Lowell,* 8 Met. 172.

The agreement with Wing cannot make them liable, being simply a covenant of non-intervention, where it was not their duty to interfere, and where they had no right to interfere. It had no bearing on the case, unless as tending to show coöperation; and in that point of view it was fully submitted to the jury.

SHAW, C. J. The present action, brought under the new practice, is of the nature of an action on the case for a disturbance of a stream called Herring River. This is the same stream, we understand, in respect to which there have been former controversies in court, two of which have been reported. *Borden* v. *Vincent,* 24 Pick. 301. *Wing* v. *Fairhaven,* 8 Cush. 363.

The evidence perhaps leaves the question in doubt, whether this is a navigable river, within the meaning and intent of the rule which protects a navigable river from whatever may obstruct it, or diminish its benefit to the public, without special authority from the legislature. The argument of the plaintiff is, that if this was a navigable river, the original erection of the bridge was a public nuisance; and if at that time or afterwards it has been so used as to cause a special damage to the plaintiff, distinct in its nature and character from that which is suffered by the public, then he may have his action to re-

10*

cover his special damage. But it was decided in the case of *Borden* v. *Vincent*, above cited, that though a bridge or dam over navigable water is a public nuisance, no one in his individual capacity can have an action for it, unless he suffers special and peculiar damage. Now, though the river be a tidal one, yet, for the purposes of this inquiry, it does not appear to us to be material whether it is a navigable river or not. It was undoubtedly a natural watercourse; and every person owning lands by which it flows has a right, as incident to the land, to all the benefit to be derived from such watercourse, as it passes through or from his land, for all useful and beneficial purposes, especially for the drainage of his land. Any obstruction of such watercourse, by which the water is pent up and set back, in consequence of which the land of an upper proprietor sustains damage, is an injury to him, for which an action at law, or, in a suitable case, a bill in equity will lie, to recover damage and abate the nuisance. Such injury is peculiar to the riparian proprietor, and wholly distinct and independent of the injury he may sustain in common with the rest of the community, by an obstruction of the navigation. Such separate and distinct injury to his land is a proper subject for a separate private action. It is true, that such a right may be granted away, released or surrendered by the riparian proprietor who enjoys it in right of his real estate, to which it is incident; and such grant or release will be binding upon those who take his estate afterwards by purchase or inheritance, such successor being privy in estate with the ancestor or predecessor.

And it follows, as a necessary consequence, that if the lower proprietor has erected and maintained a dam or other obstruction, for a mill or for any other purpose of his own, and held and enjoyed it for a long time, without opposition or complaint on the part of the land owner higher up, whose land is to any extent flowed by it, the law presumes a grant therefor, or a prescription, which is considered in law equivalent to an actual grant by deed produced. The time during which such holding must continue peaceably and adversely has, by recent enactments and judicial decisions, been fixed at twenty years. Such was the case of *Borden* v. *Vincent*, 24 Pick. 301.

But, *prima facie*, the right to a free flow of the water of a natural watercourse remains attached to the land, and any one who would call it in question must prove his right to make such obstruction by grant or prescription, that is, by deed, or by twenty years of actual, adverse and uninterrupted use of the dam, or other specific structure which has created the obstruction and caused the actual flowing of the plaintiff's land, causing the same damage now complained of; the defendants having the burden of proof to encounter and overcome this presumption; and if such right is not so established, the *prima facie* right of the land owner is conclusive.

The plaintiff therefore owning lands bordering on Herring River, which is conceded to be a natural watercourse, and as incident thereto having a right to the flow of the stream for the drainage of his land, no evidence having been offered or suggested either of grant or adverse use, no person could lawfully obstruct or justify the obstruction of the flow of the water, in such manner as to do damage to the plaintiff's land.

When the town erected their bridge over this stream early in the present century, though they may have committed a public nuisance—which however is a question solely between them and the public—they erected a wooden bridge on piers, which in no respect obstructed the free current of the stream, and did not affect the right of the plaintiff, or of the owner of the land, whose estate he now has, and was therefore not adverse to him.  So when this wooden bridge was afterwards replaced by a stone one, arches or culverts were left, sufficient to permit the water to flow off freely, and relieved the plaintiff's land from being injuriously flowed.  Such continued to be the state of things until 1846.  Since which time, even if the obstruction had been continued and uninterrupted, the time has been far too short to acquire any right by adverse use.

But it further appears that, in or about 1846, James Wing, mentioned in the report, under some claim not stated, placed gates or other obstructions in the two arches or culverts, stopped the salt water from running up, and, by the same operation, stopped the fresh water from running out, raised the water above

and flowed the plaintiff's land. The town, either by vote, or by their officers, were about removing these obstructions, when Wing filed a bill in equity against the town to restrain them from removing these obstructions, and obtained a temporary injunction to that effect. Afterwards, a motion was made on the part of the town to dissolve this injunction, and upon a hearing in October 1850, the injunction was ordered to be dissolved. *Wing* v. *Fairhaven*, 8 Cush. 363.

We take it to be well settled in this commonwealth, that in all cases where a highway, turnpike, bridge, town way or other way is laid across a natural stream and watercourse, it is the duty of those who use this franchise or privilege to make provision by open bridges, culverts or other means for the free current of the water, so that it shall not be obstructed and pent up to flow back on private lands or public ways. *Rowe* v. *Granite Bridge*, 21 Pick. 344. And it is not only their duty to make such bridge, but to keep it in such a condition that it shall not obstruct the stream.

The court are also of opinion that the agreement between the defendants and Wing was in effect a permission to him, on their part, to use the piers and abutments of their bridge, by closing the apertures and passages for water, in such manner as to enable him to raise the water on the plaintiff's land ; and so it appears that without the bridge, which the defendants were to maintain in a condition consistent with the rights of others, the damage to the plaintiff's land would not have occurred. Whatever might be the effect of this agreement upon the rights of the contracting parties, it could not relieve the defendants from the corporate duty of keeping their bridge in such a condition that it should not be the efficient cause of flowing the plaintiff's land.

The judge having instructed the jury differently, in regard to the duty of the town to keep the apertures and culverts in their bridge open for the free flow of the water, as well as to make them originally ; and that if, by express agreement, they permitted another party to close those apertures and outlets, it was not a violation of such duty, which rendered them responsible

to a third party, who suffers damage by means of such bridge, the court are of opinion that the verdict ought to be set aside and a *New trial granted.*

A trial was accordingly had at April term 1855 before *Dewey,* J., when the same evidence was introduced as at the former trial. The only additional evidence introduced by the defendants was that the bridge was built along and over the dam of an old tide mill, on which a tide mill, belonging to individual proprietors, had been in use since 1820 ; and that, when the wooden bridge was replaced by a stone one, it was done with the consent of the owners of the tide mill.

The defendants requested the court to instruct the jury "that, as the owners of the mill upon the dam which formed the highway had a right and privilege to the dam, and the water raised thereby, prior and superior to the right and easement of the town in the dam as a highway, the defendants had no legal right to interfere with the use of the dam and water by such owners, and that they could not, under such circumstances, be held responsible for any consequences which might result from the use of the dam and water by such owners ; that the defendants were not bound to take the responsibility of determining the precise extent of the rights of such owners, nor would they be liable for any damages to third persons caused by such owners exceeding the limit of their water rights ; but that the remedy in such cases would be against the owners of the mill, and not the town."

But the judge ruled " that, when a town locates a road across a natural watercourse, and proceeds to construct a bridge over such stream, they are bound to construct their bridge with such openings, or culverts, or watercourses, as will permit the water to flow off, and not to cause it to be pent up and obstructed so as to flow back upon the land of the proprietors above ; that it is the duty of the town not only to make such openings for the water to pass off, but to keep them in a proper condition, and a neglect so to do for an unreasonable length of time would render them liable for an injury caused thereby to the proprietors

of the land; that in the present case the plaintiff claims no damages from any injury that would be occasioned by the tide mill with gates and openings as they had existed and been used prior to the year 1846; that no evidence having been introduced showing any right in any third person as a mill owner to use the mill in any manner different from what it had been used prior to 1846, or to cause any greater obstructions to the passage of the water, the defendants were bound to see that the apertures and passage ways were kept open, so as to prevent the water from flowing back to the injury of the plaintiff to any greater extent than it would have done, under the operation of the tide mill as previously constructed, and a properly constructed bridge; that the defendants, by reason of their maintaining a bridge over this stream, and their duty to keep open proper passage ways, were required to keep open these passage ways, though the obstructions have been caused by acts of third persons, having no right to cause such obstructions; that a neglect to remove them for the space of time shown in the present case would subject them to damages therefor; that no question was made as to the sufficiency of notice, or lapse of time since the obstruction existed, but only whether defendants were bound to keep passage ways for the water open; that, excluding therefore all damages for any injury that would arise from the mill, and all the obstructions as existing prior to 1846, they would only allow for the injury sustained by the new obstructions since that period, which, in connection with the bridge, have caused the entire closing of the passage for the water; that the defendants were bound to keep open the passage so far as not to prevent the water to flow back beyond what it had done by the previous use of the mill; that the town having placed a bridge over the stream which caused some obstruction, and created a duty to keep open a passage way for the water, that duty still continued; and that the facts shown in evidence on the part of the defendants, as to the new obstructions, did not excuse or exonerate them from this duty."

The jury returned a verdict for the plaintiff; and the judge reported the case to the full court.

*J. H. Clifford & L. F. Brigham*, for the defendants.

*R. C. Pitman*, (*T. D. Eliot* with him,) for the plaintiff.

SHAW, C. J.    It appears to us, upon a revision of the case, that the directions of the judge were in exact conformity with the opinions of this court, formerly expressed.

Previously to 1846, the plaintiff had no cause of complaint. He had either submitted to the claim of the proprietors of the tide mill, or granted to them the right to maintain their dam as high as they had been accustomed to raise and flow the water, and this could only be to the height of the tide at high water. The only evidence offered by the defendants was evidence to prove that the owners of the tide mill had a prescriptive right to the use of the stream, and that it was not for the defendants to restrict the limits of their rights.    But it is very manifest that those owners could establish no right, by grant or prescription, for a tide mill, to justify raising the water higher than it had in fact been raised by the tide mill dam, or to convert a tide mill pond, discharged ordinarily at every tide, and never rising above high water mark, into a fresh water pond, permanent and at a higher level.    And the jury were accordingly instructed, that if the water had not been raised higher than it had been accustomed to be raised by the tide mill dam, the plaintiff had no claim for damages.    They were instructed that, unless the flowage complained of by the plaintiff was higher than that formerly caused by the tide mill dam, then the damage complained of was not caused by the bridge, or the closing of its waterways, and, of course, this action could not be maintained.

But it was contended that, if the closing of the waterways was illegal and wrong, the parties doing the wrong would be liable, and should be the parties to a suit, and that the town ought not to be sued in tort.    The ground on which the case was distinctly put was this, that the defendants claimed a right to maintain their way and public easement, as they had a right to do.    But this right was attended with a correlative corporate duty, not only to make their bridge in such manner as not to obstruct a watercourse, but also to maintain it in this condition; and a neglect to do this is a breach of corporate duty, for

which, under the old practice and old legal nomenclature, an action on the case would lie; and the same remedy under the new practice is given, under the more generic name of an action of tort. Whether the defendants were at all responsible for the acts of third parties, in using their bridge to effect an obstruction of the watercourse, was considered upon the first report. We were of opinion that the agreement then offered in evidence between the defendants and third persons, permitting them to stop the waterways, and thus convert the bridge into a solid structure, capable of raising and holding water, made them parties to the wrong act; and even if these obstructions were placed there without such express permission, it was the duty of the town to cause them to be removed.

If the objection is that Wing or others did the last act, by which the damage was done, and so they alone are answerable, we think a good answer is, that if the bridge had not been there, the water could not have been thus obstructed. The bridge was one, and an indispensable, efficient cause of the obstruction of the watercourse. If it be said that the acts of others were equally necessary, it is saying only that others as well as the defendants are liable; and then the maxim applies, that where two or more are liable for the same tort, it is not necessary that they be joined, but an action will lie against either of them.

*Judgment on the verdict.*